UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20164-CR-RNS

UNITED STATES OF AMERICA

vs.

JHONNATHAN TEDORO MARIN SANGUINO,

    Defendant.
_____/

**DEFENDANT JHONNATHAN TEDORO MARIN
SANGUINO'S SENTENCING MEMORANDUM**

Defendant Jhonnathan Tedoro Marin Sanguino ("Jhonnathan"), through undersigned counsel, hereby submits this memorandum in connection with his sentencing hearing scheduled for October 26, 2022. Upon consideration of the factors set forth in 18 U.S.C. § 3553(a) and for the reasons stated below, Jhonnathan respectfully requests a sentence below the sentencing guideline range.

**INTRODUCTION**

Jhonnathan is a well-educated, respected father, husband, son and professional who faces the Court for his first-ever encounter with the criminal justice system. As the Court is aware, he immediately accepted responsibility for his actions, and entered a guilty plea to conspiracy to commit money laundering. Before Jhonnathan ever came onto the radar of U.S. law enforcement and accepted responsibility for his actions publicly, he recognized what was happening in his countries and how his actions and the actions of others contributed to his countries' plights. With this recognition, Jhonnathan took the extraordinary steps to atone for his actions and the harm he caused by recruiting a team of key leaders who are working together to combat the corrupt political

atmosphere in Venezuela, and to elect politicians who will further their goals of equality and fairness. He has traveled to many countries, volunteered his time, and worked tirelessly to connect with the right leaders to accomplish his goal. As a result, both Jhonnathan and his wife are pariahs in their own country and cannot travel back to see their own family.

## THE APPLICABLE 3553 FACTORS

The Court must consider all 3553(a) factors before imposing a sentence. *See Gall v. United States*, 552 U.S. 38, 49-50 (2007). Title 18 U.S.C. § 3553(a) requires the Court to "impose a sentence sufficient, but not greater than necessary." *See United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006) ("if *Booker* is to mean anything, it must be that the district courts are obligated to impose a reasonable sentence, regardless of the guidelines range, so long as the guidelines have been considered."). The Court is required to consider the following seven factors before imposing a sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .

(5) any pertinent policy statement . . . ;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## ARGUMENT

Among the 3553(a) factors most applicable here are the nature and circumstances of the offense and the history and characteristics of the defendant, the needs for the sentence imposed to reflect the seriousness of the offense and to create general and specific deterrence.

**I.   Jhonnathan's role in the conspiracy was unsual and limited.**

The Court should consider the full scope of Jhonnathan's conduct, and the role he played in the conspiracy. The law requires the Court to consider the nature and circumstances of the offense. 18 U.S.C. § 3553(a)(1). The Supreme Court has affirmed that a sentencing judge is to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487 (2011) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

Jhonnathan takes full responsibility for his conduct. However, as a public official at the time, Jhonnathan's role was not typical. Although Jhonnathan was the mayor of Guanta, he had not control or authority to grant or authorize Petróleos de Venezuela, S.A ("PDVSA") contracts on behalf of the State. Rather, because Jhonnathan was mayor in Guanta, and Guanta was located in an important region for oil, where PDVSA had significant operations, Jhonnathan had connections, and used those connections to make introductions between a contractor and PDVSA officials, serving as a introducer or facilitator. Thus, in considering the nature and circumstances of the offense, the Court should consider that Jhonnathan's role in this conspiracy was inherently

3

limited by his lack of authority to award a contract of any kind on behalf of PDVSA. Jhonnathan did not, and could not, negotiate on behalf of PDVSA, or enter into any agreement on behalf of PDVSA. Instead, Jhonnathan made introductions and attended meetings where these details were negotiated. He took a percentage of the amount given to the PDVSA official who approved of the contract, which he always admitted to, but was not independently able to approve of or execute any PDVSA contract.

Jhonnathan's role, relative to his co-conspirators, is also relevant to the Court's duty consideration of "avoid[ing] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). As the Court is aware, Jhonnathan's co-conspirator Carlos Enrique Urbano Fermin was recently sentenced. Mr. Fermin's role differed from Jhonnathan's. Mr. Fermin was a contractor who obtained numerous large contracts with PDVSA subsidiaries over the four-year span of 2012-2016. *See United States v. Carlos Enrique Urbano Fermin*, Case No. 20-20163, ECF No. 13. He, like Jhonnathan, pleaded guilty to Conspiracy to Commit an Offense Against the United States, in violation of 18 U.S.C. § 371, and was sentenced to probation for a period of five years. *Id.* ECF No. 50. While Jhonnathan recognizes the severity of his actions, he respectfully submits that these details about his role in the conspiracy should be weighed by the Court in determining a sentence that is sufficient, but not greater than necessary and avoids any unwarranted sentencing disparities.

**II.   Jhonnathan immediately and fully accepted responsibility for his conduct and is actively working to combat political corruption in Venezuela.**

Jhonnathan owned up to his criminal conduct without hesitation. But he did not stop there. Jhonnathan actively worked, and continues to work, to atone for his wrongdoing. The Court may take the Defendant's cooperation into consideration when applying the Title 18 U.S.C. §3553(a)(1)

factors with regard to the history and characteristics of the Defendant in accord with *United States v. Robinson*, 741 F.3d 588 (5th Cir. 2014).

Throughout his life, Jhonnathan experienced the corrupt social and political system of Venezuela. Jhonnathan deeply regrets that his conduct played a role in that corruption. However, Jhonnathan also saw an opportunity to use his strong political connections for good, and proactively decided to address this long-standing problem even before he was aware the U.S. was investigating him. In 2018, Jhonnathan left Venezuela and moved to Mexico. His goal was to help create a truly participatory and leading democracy - an atmosphere he never experienced in Venezuela. Jhonnathan began collaborating with key leaders to improve the political atmosphere in Venezuela. They created a plan to negotiate an agreement to transition the Government from Maduro and place replacement officials in place for one year, then generate the conditions to be able to hold fair elections in one year.

Jhonnathan used his professional connections to facilitate this effort. He started by having conversations via Zoom with various ministers and some of the directors and police force leaders. He also collaborated with individuals involved in the electoral campaign and the president of the supreme court. Jhonnathan has devoted his money, time, and close connections to this cause. As the former mayor of Guanta, Jhonnathan maintained a good relationship with other political leaders. He used these relationships to begin a conversation with Leopoldo López (National Coordinator of the Voluntad Popular party), Carlos Vecchio (Ambassador of the United States to Venezuela), and Julio Borges (former president of the national assembly and founder of the justice first party).

Jhonnathan used his own funds and volunteered his time and resources to this effort. His efforts span multiple nations and a wide range of people. The United States, Norwegian, and

5

Russian governments are all participating in these negotiations. Jhonnathan's participation is critical to this resolution because of his connections and reputation. Jhonnathan also traveled to Washington, D.C. multiple times, as well as Bogota, Colombia for meetings and his efforts are ongoing. Jhonnathan continues to make himself available around the clock for this volunteer work.

The moment Jhonnathan discovered that the United States may have been investigating him for his previous conduct, he immediately hired his attorney, began cooperate, and admitted to his conduct in this case.

**III.   Based on the steps he took to atone for his actions, Jhonnathan is unlikely to recidivate.**

The Court must ensure that the sentence imposed is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, generate specific and general deterrence, and protect the public. 18 U.S.C. § 3553(a)(2). Courts have "rejected the view that the interest in general deterrence could only be served by incarceration." *United States v. Prosperi,* 686 F.3d 32, 45 (1st Cir. 2012). The Eleventh Circuit in *United States v. Clay* stressed that a sentencing court is "require[d] ... to consider characteristics of the defendant and the offense that make it more or less likely that the defendant will reoffend." 483 F.3d 739, 745 (11th Cir. 2007). Because the defendant in that case had "fundamentally changed since his offense" and "poses a lesser risk to the community," the Eleventh Circuit agreed with the sentencing court's decision to issue a variance. *Id.* at 746.

In addition, Jhonnathan has committed to making his mistakes into a learning experience. He is currently pursuing a master's degree in public administration. Jhonnathan devotes his evenings to school. He learned his lesson, and also uses this opportunity to teach his children to stand up when something is wrong and to do the right thing even when those around you are not. By acknowledging the seriousness of his crime, taking concrete actions to confront their mistakes,

and cooperating with the Government, Jhonnathan has demonstrated his post-offense respect for the law. *Compare Prosperi*, 686 F.3d at 48 (affirming a sentence of six months of home monitoring, three years of probation, and 1,000 hours of community service for a defendant with a guidelines range of 87-108 months where there was no risk of recidivism and the loss numbers did not take into account the personal characteristics of the defendant); *see also Tomko*, 562 F.3d at 560 (affirming a sentence of probation with a year of home detention and community service after taking into account the defendant's negligible criminal history, employment record, community ties, and extensive charitable works); *Gall v. United States*, 552 U.S. 38, 57-59 (2007) (affirming a sentence of probation where there was "strong support that [defendant] was not going to return to criminal behavior and was not danger to society"). Jhonnathan has done everything not only to fully accept responsibility and completely and without reservation cooperate, but to show his profound shame and remorse. He will live with that shame and torment for the rest of his life.

**IV. Jhonnathan's personal characteristics and history make him unlikely to recidivate.**

There is much more to Jhonnathan than his criminal conduct. Congress has directed that a defendant's personal characteristics should be considered equally with "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). "The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition . . . employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are. . . matters that § 3553(a) authorizes the sentencing judge to consider." *Rita v. United States*, 551 U.S. 338, 364-65 (2007); *see also United States v. Prosperi*, 686 F.3d 32, 39 & 45 (1st Cir. 2012) (affirming downward variance from 87-108 months to home detention because the loss numbers

did not take into account the personal characteristics of the defendant); *United States v. Martin*, 520 F.3d 87, 93 (1st Cir. 2008) (affirming a 91-month variance below the guideline range based in part on "the support that the defendant stood to receive from his family [and] personal qualities indicating his potential for rehabilitation").

Jhonnathan is a forty-four year old man who was born and raised in Venezuela. He was raised in a working-class family with his sister and brother. He has been married to his wife Esneidy Villanueva Medina since 2009. Together, Jhonnathan and his wife have three children; Nicole (15), Jonathan (12) and Paola (10). Jhonnathan's wife also has a son, Rafael (23) who Jhonnathan has raised as his own son from a young age.

Jhonnathan is well-educated. First, he studied civil engineering courses. Jhonnathan then received his law degree in 2010. Jhonnathan is currently attending online public administration courses through an online university, which he will complete in one and a half years. He went to Santa Maria de Oriente University where he obtained his law degree, and continued his studies and later on achieved a postgraduate degree in public administration. In 2007, Jhonnathan decided to participate in the elections for mayor of the Guanta Municipality for 2008. At that time, they founded the PSUV party and internal elections were held to choose the candidates, and Jhonnathan won. Then in 2013, he participated again in the internal elections of the PSUV party and was re-elected for the term of 2013-2017 and at the end of the term he left the country due to political persecution. The recidivism rate for offenders with college degrees, like Jhonnathan, is significantly lower. *See U.S. Dept. of Justice, Nat'l Inst. of Justice, Five Things About Deterrence* (July 2014).

No matter what sentence the Court imposes, this offense was Jhonnathan's first and last run-in with the federal system. Jhonnathan has no criminal history. This offense is the only blemish

on Jhonnathan's record as a law-abiding citizen. Courts have held that a lack of a defendant's criminal record is an appropriate consideration for the court, and therefore may be given weight in this Court's §3553(a) analysis. In *United States v. Monetti*, 705 Fed.Appx. 865 (11th Cir. 2017) the district court considered all the §3553(a) factors, and as for the defendant's personal history and characteristics, the court mentioned Monetti's lack of criminal history, and explicitly granted him a downward variance from his guideline range based in-part on the evidence that he had a low risk of recidivism. The United States Department of Justice agrees with the conclusion that incarcerating defendants is not an effective means of deterrence. *See U.S. Dept. of Justice, Nat'l Inst. of Justice, Five Things About Deterrence* (July 2014). In fact, the Department of Justice finds that even increasing the severity of punishment does little to deter crime. *See id.*; *see also* Hannah Arendt, Eichmann in Jerusalem, Epilogue (1963) ("No punishment has ever possessed enough power of deterrence to prevent the commission of crimes"). Additionally, "those with stable employment in the year prior to their instant offense are less likely to recidivate (19.6%)." *Id.*

Jhonnathan has the support and connection with his family necessary to keep him on the right path going forward. For 22 years, Jhonnathan has been happily married to his wife, Esneidy Mayerling Villanueva Medina. The recidivism rate for offenders who are married is significantly lower. *Id. See U.S. Dept. of Justice, Nat'l Inst. of Justice, Five Things About Deterrence* (July 2014). Together, Jhonnathan and Esneidy have three children: Nicole Alexandra Marin Villanueva (16 years old), Jonathan Alexander Marin Villanueva (12 years old), and Paola Alejandra Marín Villanueva (9 years old). Esneidy has a son, Raphael Alexander Villanueva (22 years old), from a prior relationship who Jhonnathan raised as his own from a young age.

Although he took full responsibility and accepted the consequences he will face, Jhonnathan's biggest regret is the impact these consequences will have on his wife, children, and

9

parents. Due to this case, Jhonnathan currently resides in Miami, Florida, and is separated from his wife and children, who are residing in Mexico. The impact on these children from a loss of a father is catastrophic. *See* DOJ report on the impact of parental incarceration on children, https://nij.ojp.gov/topics/articles/hidden-consequences-impact-incarceration-dependent-children.

We urge the Court to consideration to these important characteristics and impose a sentence beneath the guideline range.

## **CONCLUSION**

Jhonnathan respectfully requests that the Court carefully consider the significant factors above, including his independent efforts to atone for his wrongdoing, his full acceptance of responsibility, the impact on his family and his unlikeliness to ever recidivate, in imposing a fair sentence. He further respectfully requests that the Court, based on his personal history and characteristics, order a sentence beneath the sentencing guideline range.

Date: October 23, 2022                                      Respectfully Submitted,

/s/   Michael B. Nadler
Michael B. Nadler
Fla. Bar No. 0051264
mnadler@sfslaw.com
Jacqueline Z. DerOvanesian
Fla. Bar No. 125662
jderovanesian@sknlaw.com
STUMPHAUZER KOLAYA NADLER & SLOMAN, PLLC
One Biscayne Tower
2 South Biscayne Blvd.
Suite 2250
Miami, FL 33131
Tel: (305) 614-1411
Fax: (305) 614-1425

**CERTIFICATE OF SERVICE**

I certify that on this 23rd day of October, 2022, I electronically filed this document with the Clerk of the Court using CM/ECF, causing a copy to be served on counsel of record.

/s/ *Michael B. Nadler*
Michael B. Nadler